**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**JENIFER HADLEY,**

**Plaintiff,**

**v.** **Case No: 5:13-cv-593-Oc-18PRL**

**COMMISSIONER OF SOCIAL SECURITY**

**Defendant.**

---

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). (Doc. 18). The Court has reviewed the record, the memoranda, and the applicable law. For the reasons set forth herein, the Commissioner's decision should be **AFFIRMED.**

### I. Procedural History and Summary of the ALJ's Decision

On October 26, 2010, Plaintiff filed applications for DIB (Tr. 142-43) and SSI (Tr. 144-53), alleging a disability onset date of June 1, 2003. (Tr. 142). The Social Security Administration ("SSA") denied her applications initially (Tr. 80-87) and upon reconsideration (Tr. 94-99). Plaintiff requested a hearing before an Administrative Law Judge (Tr. 12-13), and on March 22, 2012, ALJ Julia A. Terry ("the ALJ") held a hearing. (Tr. 36-67). On May 11, 2012, the ALJ issued an unfavorable decision. (Tr. 14-35).

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2003, the alleged onset date. (Tr. 19). At step two, the ALJ determined that Plaintiff had the following severe impairments: interstitial cystitis ("IC"), mild lumbar degenerative disc disease, plantar fasciitis of the feet, headaches, and possible fibromyalgia. (Tr. 19).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 21). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a wide range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). the claimant can lift and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk 6 out of 8 hours; sit 6 out of 8 hours; can do all postural activities at least occasionally, but no climbing ladders, ropes or scaffolds; needs to avoid concentrated exposure to work hazards; and requires a 2-3 minute restroom break 1 time per hour.

(Tr. 21).

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a medical assistant and optometric assistant, work which does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 28). Thus, the ALJ found that Plaintiff was not disabled from June 1, 2003, through the date of the decision. (Tr. 28).

The Appeals Council denied Plaintiff's request for review. (Tr. 1-7). After exhausting her administrative remedies, Plaintiff timely filed the instant appeal. (Doc. 1).

## II. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## III. Analysis

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ failed to fully and fairly develop the record regarding Plaintiff's depression and anxiety. Second, Plaintiff contends that the ALJ's credibility finding is "meaningless boilerplate," and that the ALJ erred by failing to explain how the testimony regarding urination was not credible in light of Plaintiff's dual diagnoses of stress urinary incontinence and chronic IC. (Doc. 18, p. 34).

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court submits that the ALJ properly developed the record regarding Plaintiff's mental impairments, and substantial evidence supports the ALJ's decision to give partial weight to Plaintiff's testimony and allegations.

### A. The ALJ Was Not Required To Further Develop The Record

It is well-settled that the ALJ has a "basic obligation" to develop and full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Although the ALJ has a basic obligation to fully and fairly develop the record, Plaintiff – and not the ALJ – bears the burden of proving she is disabled, and thus, Plaintiff is responsible for producing evidence to support her claim. *Id*. The ALJ's obligation to develop a full and fair record includes ordering a consultative examination if one is needed to make an informed decision. *See Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). However, an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Because the Social Security Act requires only substantial evidence to support the ALJ's findings, a consultative examination is not required to establish absolute certainty regarding

Plaintiff's condition. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Moreover, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). The court should be guided by whether the record shows evidentiary gaps which result in unfairness or "clear prejudice." *Id.*

Plaintiff argues that in light of evidence showing that she suffers from depression and anxiety, the ALJ failed to properly develop a full and fair record regarding Plaintiff's mental health impairment. Specifically, Plaintiff contends that, rather than relying on the "sparse" record regarding Plaintiff's depression and anxiety diagnoses, the ALJ should have ordered an additional consultative exam to include objective psychological testing, including a Minnesota Multiphasic Personality Inventory ("MMPI"), to determine if Plaintiff's depression and anxiety were severe. (Doc. 18, p. 26). However, Plaintiff fails to show that a consultative examination was necessary for the ALJ to make an informed decision, or that she was prejudiced by the lack of a consultative examination.

Plaintiff identifies no specific evidence to support the allegation that the ALJ failed to develop the record regarding Plaintiff's mental impairments. Instead, Plaintiff merely concludes that the record is "incomplete," (Doc. 18, p. 25) and ignores the ALJ's analysis of Plaintiff's mental health record and testimony. In fact, Plaintiff misstates facts in the transcript. Plaintiff alleges that "neither prior counsel or [*sic*] ALJ Terry asked about Plaintiffs [*sic*] anxiety." (Doc. 18, p. 26). A plain reading of the record shows, however, that Plaintiff's prior counsel asked at least three questions about her anxiety, its frequency, and its triggers. For instance, counsel asked Plaintiff whether she "ever [had] anxiety problems," "how frequent," and "does anything trigger

[Plaintiff's anxiety]?" (Tr. 52).

Despite Plaintiff's contentions, the ALJ in the instant case analyzed a fully developed, unambiguous record before concluding that Plaintiff's mental impairments were not severe and that she was able to perform past relevant work. In reaching her conclusion, the ALJ: (1) conducted a psychiatric review technique ("PRT") to evaluate Plaintiff's mental impairments (Tr. 19-21); (2) considered Plaintiff's November 2010 Bio-Psychosocial Evaluation, including the therapists' GAF ratings (Tr. 25-26, 404-16); and (3) weighed the opinions of state agency psychologists, Luisa Burgio, Psy. D. (Tr. 376) and Pamela Green, Ph. D. (Tr. 346). As discussed below, such evidence is more than sufficient for the ALJ to assess Plaintiff's impairments.

**1. Psychiatric Review Technique**

The ALJ considered the four broad functional areas (the "paragraph B" criteria) outlined in the disability regulations for evaluating mental disorders and the Listing of Impairments. First, she evaluated Plaintiff's activities of daily living, based on the December 2010 and April 2011 Function Reports (Tr. 193-203 & 221-236). The Reports demonstrate that Plaintiff takes care of her two children, who have health problems, by making sure they are fed, take their medications, do their homework, and take baths. (Tr. 197). In addition, Plaintiff does all of the cooking, cleaning, vacuuming, laundry, and pays the bills. (Tr. 20). She drives to the grocery store and to pick up medicine, goes to dinner, shops, and attends grandkids' activities, and school events on a regular basis. (Tr. 200, 227). In light of these Reports, the ALJ found that Plaintiff had a mild limitation in this area.

Next, the ALJ considered Plaintiff's social functioning. The Reports show that Plaintiff goes to school events two times a month, goes to medical appointments regularly, attends Bible study weekly, and grocery shops at least four times a month. (Tr. 20). The ALJ noted that the

physicians and staff present at Plaintiff's numerous medical appointments never mentioned any difficulties in social functioning. (Tr. 20). Given these facts, the ALJ found Plaintiff had a mild limitation in this area.

Third, the ALJ considered Plaintiff's concentration, persistence, or pace. In making her finding that Plaintiff has a mild limitation in this area, the ALJ considered Behavioral Support Services' November 2010 Bio-Psychosocial Evaluation (the "Evaluation") (Tr. 404-16) and Plaintiff's testimony. The Evaluation revealed average IQ, logical and coherent thought process, good insight/judgment, and good attention/concentration. (Tr. 405). Plaintiff could pay bills, count change, handle a savings account, and use a checkbook and money orders. (Tr. 199, 227). In finding that Plaintiff had a mild limitation in this area, the ALJ noted Plaintiff's testimony that she drives a car, even minimal operation of which requires substantial attention and concentration. (Tr. 20).

Finally, the ALJ found that Plaintiff had experienced no episodes of decompensation. (Tr. 20).

Finding only mild limitations in activities of daily living, social functioning, maintaining concentration, persistence, and pace, and no decompensation, the ALJ properly determined that Plaintiff's mental impairments were not severe. (Tr. 19).

**2. Bio-Psychosocial Evaluation**

Despite finding that Plaintiff's mental impairments were not severe, the ALJ then considered additional medical and testimonial evidence concerning Plaintiff's mental impairments in evaluating her RFC.

The ALJ reviewed Plaintiff's Evaluation performed by Behavioral Support Services, Inc. (Tr. 404-16). Plaintiff described experiencing difficulties due to family problems, including

separating from her husband, which produced sadness, emptiness, tearfulness, anxiety, and stress. (Tr. 404). The Evaluation noted a Global Assessment Functioning ("GAF") rating of 50. (Tr. 410). In light of Plaintiff's short period of attendance for counseling, the situational depressive complaints, and no indication that Plaintiff's mental symptoms lasted or would last at a severe level for at least twelve continuous months, the ALJ found that the GAF rating failed to support a finding of a severe mental impairment. (Tr. 27).

The Evaluation supports the ALJ's finding. Under "Reason for Referral," the document shows that "Client is having difficulty adjusting to the separation of her husband . . . and would like to have counseling to work through sadness and anger . . . as she is now a single parent to two children." (Tr. 404). The "Current Relating Issue or Stressor" section notes that Plaintiff's husband separated from the family in June 2010 and now has a "single life" in which he sees the children infrequently. (Tr. 404). The evaluator stated that Plaintiff would benefit from counseling services as the whole family adjusted to "life without her husband/their father," and the Interpretive Summary stated that Plaintiff was "trying to adjust to being a single parent and living life as a single adult," while trying to figure out how to financially support herself and her children. (Tr. 409). These numerous statements support the ALJ's finding that Plaintiff's mental impairments were "situational due to the spouse leaving the marriage." (Tr. 27).

The Mental Status Examination revealed that Plaintiff had an appropriate appearance, nutritional status, eye contact, motor behavior, and thought content. (Tr. 405). Her facial expression was interested and attentive, her thought processes were logical and coherent, and her speech was normal. (Tr. 405). In addition, while Plaintiff presented a dysphoric mood, she had an appropriate affect, a cooperative attitude and behavior, good attention, concentration, and judgment. (Tr. 406).

Further, the treatment recommendations note that Plaintiff would benefit from weekly counseling sessions, but did not indicate, as the ALJ found, that her mental symptoms lasted or were expected to last at a severe level for at least twelve continuous months. (Tr. 27). Plaintiff had follow up appointments in October 2011 (Tr. 417) and January 2012 (Tr. 419), where a therapist indicated that the diagnosis of adjustment disorder was no longer valid, though Plaintiff met criteria for depressive disorder NOS and had a GAF rating of 38. (Tr. 26, 419).

As noted above, while the ALJ considered the GAF ratings, she found that they were not supported by the evidence of record, namely her limited mental health treatment history and the situational (rather than permanent) nature of her impairments. (Tr. 27). The Eleventh Circuit has noted that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)); *see also Stottler v. Astrue*, No. 8:09-CV-1719-T-TBM, 2010 WL 3833679, at *9 (M.D. Fla. Sept. 28, 2010) (affirming denial of benefits where the "ALJ concluded that the condition was not as severe as suggested by Plaintiff's GAF scores" after "assessing the Plaintiff's history of depression and anxiety"). Thus, it was within the ALJ's purview to consider Plaintiff's GAF scores but find them inconsistent with the other evidence of record.

**3. State Agency Psychologists**

The ALJ also considered the opinions of state agency psychologists, Dr. Burgio and Dr. Green. (Tr. 27). Dr. Burgio's January 2011 assessment concluded that Plaintiff's mental impairment of a mood disorder was "not severe." (Tr. 367). Notably, Dr. Burgio did not find evidence of depressive syndrome or anxiety-related disorders. (Tr. 367 & 369). Dr. Burgio

found Plaintiff to have only "mild" limitations in activities of daily living, social functioning, concentration, persistence, or pace, and no episodes of decompensation. (Tr. 374). Based on Plaintiff's function report, Dr. Burgio noted that Plaintiff took care of her personal needs and hygiene, cared for her two children, cooked, attended appointments, did chores, shopped for groceries, and drove. (Tr. 376). She interacted with friends and family on the phone or in person, attended school events, dinners, and activities, with difficulty due to her back pain. In light of the available mental health information, Dr. Burgio concluded that Plaintiff's impairments were not severe. (Tr. 376).

Dr. Green's April 2011 case analysis affirmed Dr. Burgio's assessment that Plaintiff's mental impairment was not severe. (Tr. 346).

The ALJ afforded these state agency psychological consultants' opinions significant weight, as they were consistent with the findings in the overall medical record, the mental status examination (Tr. 404-16), and Plaintiff's activities of daily living. (Tr. 27).

Based on the foregoing, there was sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's mental health impairment. Plaintiff's unsupported allegations are not a sufficient basis for finding that a consultative examination was necessary. Indeed, Plaintiff can only speculate that a consultative examination would support – and not refute – her claim of a disabling mental impairment. Accordingly, the ALJ was not required to order a consultative psychological examination.

**B. Substantial Evidence Supports the ALJ's Credibility Finding**

Next, Plaintiff argues that the ALJ did not properly consider her credibility, particularly by failing to explain how Plaintiff's testimony regarding urination was not credible.[2] In her

[2] As Plaintiff only objects to the ALJ's consideration of her statements regarding her urinary incontinence and IC (Doc. 18, p. 34), the Court limits its discussion to those aspects of the ALJ's credibility findings.

Disability Report, Plaintiff states that she is unable to work due to degenerative disc disease, chronic back pain, and IC. (Tr. 168). She also suffers from radiculitis, fibromyalgia, plantar faciitis in both of her feet, depression, mood disorder, anxiety disorder, insomnia, and headaches. (Tr. 40). The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are only partially credible to the extent they are inconsistent with the above [RFC] assessment and her extensive activities of daily living." (Tr. 23). When as here, an ALJ decides to only partially credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dep't of Health and Human Servs*., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence). The undersigned has no difficulty concluding in this case that the ALJ met her burden.

As an initial matter, Plaintiff contends that the ALJ's credibility finding is "meaningless boilerplate," citing *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012) and *Hardman v. Barnhart*, 362 F.3d 676 (10th Cir. 2004). Subsequent cases from the Seventh and Tenth Circuits have clarified that despite the inclusion of boilerplate language, an ALJ's decision can still be affirmed where the ALJ provides analysis and justifies his credibility analysis. *See e.g., Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2010) (use of "boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'"); *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) ("the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination.") Here, the ALJ did not simply rely on boilerplate; rather,

as discussed below, she provided a thorough explanation of the evidence and her reasoning about Plaintiff's credibility.

"Carefully" observing Plaintiff throughout the hearing, the ALJ considered Plaintiff's testimony about her pain and the symptoms her impairments caused. (Tr. 22-23). Plaintiff reported that her lifelong IC causes her to urinate frequently (every 30-40 minutes), though it is difficult and painful. (Tr. 43-44). Sometimes she spends 30 minutes in the restroom. In addition, she has sharp pains in her pelvic area and low back pain affected by her bladder. (Tr. 45).

The ALJ correctly found that Plaintiff's allegations of totally disabling symptoms were undermined by the absence of any restrictions precluding work activity placed on Plaintiff by treating doctors. (Tr. 26).[3] The ALJ noted that in October 2010, Plaintiff saw Urology Health Services of St. Cloud regarding low bladder compliance and urinary hesitancy. (Tr. 24 & 387). The urodynamic study showed predominantly normal findings, with stress urinary incontinence with a diagnosis of chronic IC. The ALJ emphasized, however, that the urologist noted no urethra abnormalities. (Tr. 24). Dr. Grant's January 2011 report, on referral from the Office of Disability Determination, found Plaintiff's complaints consistent with the objective medical findings, but contained no physical limitations. (Tr. 25, 343). Later in August 2011, Orlando Health Rehabilitation Institute evaluated Plaintiff and, far from suggesting that she limit her activity, they recommended a home exercise program. (Tr. 396). A January 2012 report from

[3] The ALJ notes that Dr. Rocker and Dr. Brinson opined in September 2010 and January 2012 respectively that Plaintiff cannot work due to restrictions of special needs children with multiple health issues and her chronic back pain. (Tr. 26). The ALJ afforded "no weight to these opinions because they are not supported by findings in the treatment records, are not consistent with the treatment level, and are not consistent with claimant's activities of daily living." (Tr. 26). Plaintiff did not challenge the ALJ's consideration of either Dr. Rocker or Dr. Brinson's opinions, and thus, the Court finds that Plaintiff has waived any objections on these grounds.

DPH Urology Associates noted that Plaintiff felt her Elmiron was helping her symptoms "a little." (Tr. 424).

The ALJ correctly stated that "subjective complaints and self-imposed restrictions are insufficient to establish disability." (Tr. 26). Indeed, it is well-established that it is the functional limitations from an impairment, and not the mere diagnosis of an impairment that are determinative in evaluating disability. *Britt ex rel. Holder v. Colvin*, No. 8:12-cv-1638-T-TGW, 2014 WL 106584, at *5 (M.D. Fla. Jan. 8, 2014). The routine and conservative nature of the treatments prescribed corroborated the ALJ's finding that the treatment records do not show the same functional limitations contained in Plaintiff's testimony. For instance, DPH Urology Associates' Dr. Williams instructed Plaintiff to follow an IC diet, perform Kegel exercises, keep a bladder diary, and stop drinking eight cups of coffee in the morning. (Tr. 26). The ALJ underscored that Plaintiff was reluctant to follow her doctors' advice to help with her IC. (Tr. 27, 429). In addition, the record did not show that Plaintiff required frequent emergency room visits, inpatient hospitalizations, intensive pain management, physical therapy, or surgery. (Tr. 27).

Plaintiff also appears to argue that the ALJ improperly relied upon objective evidence to discredit her complaints of disabling impairments, citing *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). (Doc. 18, p. 31-32). However, *Swindle* cannot be read so broadly as to prevent an ALJ from considering objective evidence in his or her credibility determination. Indeed, the regulations explicitly provide that an ALJ may consider objective medical evidence when assessing credibility. *See* 20 C.F.R. § 404.1529(c)(2). In *Swindle*, the plaintiff alleged that she had disabling dizziness and pain in her lower extremities caused by systemic lupus. *Swindle,* 914 F.2d at 226. The ALJ discounted the plaintiff's allegations based on objective medical evidence that was irrelevant to lupus (i.e., full range of motion in her joints, no synovitis) and thus, the

objective medical evidence did not contradict the plaintiff's testimony. *Id*. Here, unlike in *Swindle*, the ALJ relied on treatment notes of examining sources, Plaintiff's actions to obtain symptom relief, and past work history, that contradicted Plaintiff's testimony of disabling limitations.

As discussed above, the evidence as a whole did not substantiate the alleged disabling symptoms. Indeed, Plaintiff received routine treatments for her impairments. Moreover, no treating or examining physician has imposed functional limitations that would preclude her from working. Rather, Plaintiff claimed she has had back pain and urinary problems since childhood, but was able to work as a medical assistant and optometric assistant despite these conditions. (Tr. 28, 162). In addition, the ALJ properly noted that Plaintiff's "very significant" reported activities of daily living, including maintaining her own household and caring for her two minor children who have illnesses, were inconsistent with disabling symptoms. (Tr. 28); *see Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). Further, her treating sources did not restrict her activities of daily living; instead, they advised Plaintiff to exercise and stay active. (Tr. 27, 462-94).

Accordingly, the undersigned concludes that the ALJ articulated numerous compelling reasons, well-supported by the record, for only affording partial weight to her testimony and allegations.

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be **AFFIRMED**.

**DONE AND ENTERED** in Ocala, Florida, on December 19, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

District Judge

All Counsel